# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK ESPINOZA RAMIREZ,<br><br>           Petitioner,<br><br>   v.<br><br>BRENDA CASH, Warden,<br><br>           Respondent.                        / | 1:10-CV-02298 AWI GSA HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tulare, following his conviction by jury trial on August 26, 2008, of ten counts of lewd and lascivious conduct with a child under fourteen years of age. He was sentenced to serve a determinate term of 8 years plus two consecutive indeterminate terms of 15 years to life in state prison.

Petitioner filed a timely notice of appeal. On March 18, 2010, the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned

---

[1] This information is derived from the petition, the answer, and the exhibits lodged with the answer.

1

decision. (LD² 4.) Petitioner then filed a petition for review in the California Supreme Court. (LD 5.) The petition was summarily denied on June 9, 2010. (LD 6.)

On December 7, 2010, Petitioner filed the instant federal habeas petition. He claims the trial court erred in instructing the jury with CALCRIM No. 1193 by erroneously directing the jury to consider the expert witness testimony "in evaluating the believability of [the victims'] testimony." (See Petition at 5.) On February 25, 2011, Respondent filed an answer to the petition. Petitioner did not file a traverse.

## STATEMENT OF FACTS³

> Two of defendant's nieces told their mothers that defendant had touched them over and under their clothing when they were preteens. After police investigation, defendant was charged with 10 counts of child molestation (Pen.Code, § 288, subd. (a)) in an information that also included allegations pursuant to Penal Code sections 1203.066, subdivision (a)(8) (substantial sexual conduct) and 667.61, subdivision (b) (multiple victims).
>
> At trial, the victims, V.Z. and K.W., testified concerning the molestations. In addition, one of defendant's adult nieces testified defendant had molested her when she was a preteen. Defendant's stepdaughter testified defendant molested her when she was about 16 years of age. The prosecution presented other witnesses, including Anthony Urquiza, Ph.D. Urquiza is a clinical psychologist and testified as an expert concerning CSAAS. He testified that he did not "know very much about" the specifics of the present case and that his testimony was intended only to "provide information about sexual abuse." FN1
>
> > FN1. This appeal does not present issues arising from the content of Urquiza's testimony. To summarize that testimony briefly, Urquiza testified there are five recognized preconceptions many people share concerning child sexual abuse and that these preconceptions were generally recognized as not true with respect to many victims of childhood sexual abuse. He identified the following as parts of the syndrome: (1) Secrecy concerning the important and traumatic events, even though there might be a common misperception that children "are going to go run and tell somebody" when something bad happens to them; (2) a feeling of helplessness, even though there might be a common misperception that a victim would run away or otherwise try to protect herself; (3) emotional detachment from the events, resulting in a flat affect when recounting the events, even though there might be a common misperception that these traumatic events would be reflected in display of strong emotions in recounting the events; (4) delayed and unconvincing disclosure, resulting in a gradual and sometimes inconsistent disclosure of the molestations, even though there might be a common misperception that a child would immediately and fully recount the traumatic events; and (5) recantation of allegations after there is pressure applied by other

---

²"LD" refers to the documents lodged by Respondent with her answer.

³The summary of facts is adopted from the opinion of the Fifth DCA and is presumed correct. 28 U.S.C. § 2254(e)(1).

family members (Urquiza did not identify a specific misperception this factor is meant to address). Urquiza testified that CSAAS is not a diagnostic tool, but was designed to help others understand that certain behaviors do not indicate that a child was not abused. On cross-examination, defense counsel delved into the issue of false accusations of abuse. Urquiza subsequently testified that false accusations by the child who claims abuse are very rare. Even the more frequent false accusations by adults on behalf of children occur only in the range of 1 to 5 percent of cases.

The defense presented testimony from other relatives of defendant. They testified the victims had never told them defendant had molested them and that the victims did not seem afraid of or uncomfortable around defendant.

The jury found defendant guilty of all charged counts and found true the additional allegations. The court sentenced defendant to a determinate sentence of eight years in prison, plus two consecutive terms of 15 years to life. Appellant filed a timely notice of appeal.

(LD 4.)

**DISCUSSION**

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. He was convicted in Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.   Standard of Review

The instant petition is reviewed under the provisions of the Antiterrorism and Effective

Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003). Under the AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Lockyer</u>, 538 U.S. at 70-71; <u>Williams</u>, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412; <u>see also</u> <u>Harrington v. Richter</u>, __ U.S. __, 131 S.Ct. 770, 785 (2011). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Lockyer</u>, 538 U.S. at 71.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72, *quoting*, 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411;

see also Harrington, 131 S.Ct. at 785. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Williams, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S.Ct. at 786, *quoting*, Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Further, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. __, __, 129 S.Ct. 1411, 1413-14 (2009). "Under 2254(d), a habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of [the Supreme] Court." Harrington, 131 S.Ct. at 786. Only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may the writ issue. Id.

    Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

    AEDPA requires that we give considerable deference to state court decisions. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett,

1  393 F.3d 943, 976-77 (2004).

2  III.     Review of Claim

3  The trial court instructed the jury with CALCRIM No. 1193, as follows:

> You have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodation syndrome. Dr. Anthony Urquiza's testimony about sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not VZ, KW, Maria Garza, and Virginia Arredondo's conduct was not inconsistent with the conduct of someone who has been molested, *and in evaluating the believability of their testimony.*

(LD 7.)

On appeal, Petitioner alleged the italicized language above invited the jury to apply the expert's testimony case-specifically to evaluate the believability of the named witnesses who testified at trial. In this way, the instruction, "crossed the line and had directly endorsed the jury's use of this testimony to bolster the credibility of these witnesses and thereby to assist the prosecution in proving that the charges against [Petitioner] were true." (LD 1 at 13.) Petitioner alleges the prosecution's burden was thereby lessened.

The Fifth DCA rejected the claim in a reasoned opinion. It was then presented in the petition for review in the California Supreme Court where it was summarily denied. When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to the court below that has issued a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991). The appellate court denied the claim as follows:

> CSAAS testimony is not admissible to prove that the alleged victim has been molested. (*People v. Bowker* (1988) 203 Cal.App.3d 385, 390-394, 249 Cal.Rptr. 886; see *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300, 283 Cal.Rptr. 382, 812 P.2d 563.) Such testimony from a properly qualified expert is admissible, however, "to rehabilitate [a] witness's credibility when the defendant suggests that the child's conduct after the incident-e.g., a delay in reporting-is inconsistent with his or her testimony claiming molestation." (*Ibid.*) Such conduct, when viewed through the prism of common misconceptions about child sexual abuse victims, might be viewed by the jury as impeaching the witness's credibility. (*Id.* at p. 1301, 283 Cal.Rptr. 382, 812 P.2d 563.)
>
> It is appropriate for the court to instruct the jury concerning the limited purpose for which the evidence is admitted. The jury should be instructed that it must not use the CSAAS evidence to determine whether the victim's molestation claim is true. (See *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1384, 7 Cal.Rptr.2d 660.) The evidence is admissible only to show that the alleged victim's statements and actions, as established by other evidence in the case, are not inconsistent with having been molested. (*Ibid.*) In the present case, the court instructed the jury using CALCRIM No. 1193, as follows: "You

|   |   |
|---|---|
| 1 | have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodation syndrome. [¶] Dr. Anthony Urquiza's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not V.Z., K.W., Maria [G.], and Virginia [A.]'s conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony." |

       In the present case, defendant does not contend the expert's testimony was inadmissible, and he acknowledges the reason it is admissible is to permit the jury fully to evaluate the credibility of the alleged victims' testimony, without the impediment of common lay misperceptions about the expected behavior of child molestation victims. Instead, he contends: "The nub of the issue ... is the difference between the credibility factors as to a complaining witness supporting a theory of admissibility of evidence versus the court taking the further, and inappropriate, step of affirmatively advising the jury that the jury can use the supposedly generic syndrome evidence to prove up the credibility of a complaining witness in a specific case."

       Defendant does not cite any authority for the proposition that it is "inappropriate," much less prejudicial error, for the court to instruct the jury on the permissible purposes for which it may consider evidence. Such a rule would make no sense because, in the case of evidence admitted for a limited purpose, that is the precise function of the instruction. (See Evid.Code, § 355.) In addition, a limiting instruction usually would be beneficial to the party who might be harmed by unrestricted jury consideration of the evidence. In the present case, that party is the defendant, who might be prejudiced if the jury used the CSAAS evidence as proof defendant committed the charged crimes. (See *People v. Housely* (1992) 6 Cal.App.4th 947, 958-959, 8 Cal.Rptr.2d 431.)

       In various cases, such as *People v. Housely, supra,* 6 Cal.App.4th at page 959, 8 Cal.Rptr.2d 431, and *People v. Gilbert supra,* 5 Cal.App.4th at page 1384, 7 Cal.Rptr.2d 660, appellate courts have held that juries must be instructed that CSAAS evidence is not to be used as proof a molestation occurred. No case cited by appellant-nor any we have found-holds that it is error for the trial court to go a step further and tell the jury the permissible purpose for its consideration of CSAAS evidence. We can see no benefit to either party, or to the cause of justice, in requiring the jury to blindly guess at the purpose of this evidence. The court here did not err in instructing the jury it could use the CSAAS evidence in evaluating the credibility of the witnesses in this case.

(LD 4.)

An allegation that a jury instruction is incorrect under state law does not form a basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."). To merit relief in a federal habeas action, a petitioner must demonstrate that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" Henderson v. Kibbe, 431 U.S. 145, 154 (1977), *quoting* Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); California v. Roy, 519 U.S. 2, 5 (1996) (challenge in habeas to the trial court's jury instructions is reviewed

under the standard in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) - whether the error had a substantial and injurious effect or influence in determining the jury's verdict.).  The instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72, *quoting* Cupp, 414 U.S. at 147.

As discussed by the appellate court, under California law, Child Sexual Abuse Accommodation Syndrome ("CSAAS") testimony is admissible to rehabilitate a child victim's credibility.  However, it is not admissible for the purpose of proving the victim had been molested. In this case, the jury was instructed that Dr. Urquiza's testimony regarding CSAAS could not be used to prove Petitioner molested the victims. This was in complete accord with California law.  The jury was further instructed that the only permissible purpose for consideration of this evidence was in determining the credibility of the witnesses.  Petitioner argues this was error.  As stated by the appellate court, this argument is nonsensical.  Such a limiting instruction could only have benefitted Petitioner by focusing the jury on the only permissible use of the evidence, rather than leaving the jury to guess the reason for the evidence. Further, as argued by Respondent, the jury was fully instructed on the fact that Petitioner was presumed innocent and that the prosecution bore the burden of proving Petitioner's guilt beyond a reasonable doubt. (LD 7 at 681-682, 704.)  Therefore, the instruction was not erroneous and certainly did not rise to the level of a constitutional violation having a substantial and injurious effect on the verdict.  The state court decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  Accordingly, the claim must be rejected.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED.  The Court further RECOMMENDS that the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of

California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

**Dated:   May 13, 2011**                             /s/ Gary S. Austin
                                                   UNITED STATES MAGISTRATE JUDGE